IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAWN MARIE BALL,** : | CIVIL NO. 1:CV-08-0700 |
| **Plaintiff,** : | |
| : | **(Chief Judge Kane)** |
| v. : | |
| : | |
| **DR. FAMIGLIO, et al.,** : | |
| **Defendants** : | |

## MEMORANDUM

Plaintiff Dawn Marie Ball is an inmate confined at the State Correctional Institution at Cambridge Springs, Pennsylvania. She filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 14, 2008. The matter proceeds on a second amended complaint filed on March 12, 2010, naming twenty-eight (28) Defendants. (Doc. No. 86.) Before the Court for consideration are Plaintiff's fourth and fifth requests for the appointment of counsel (Doc. Nos. 87, 110), and motion for injunctive relief (Doc. No. 88). Also pending are motions to dismiss the second amended complaint filed by three (3) groups of Defendants. (Doc. Nos. 91, 93 and 96.) For the reasons that follow, the motions for counsel and for injunctive relief will be denied. The motion to dismiss filed by Defendants Wood and Shiptowski will be granted. The motions to dismiss filed by the remaining Defendants will be granted in part and denied in part.

I.   **Background**

Named as Defendants in the second amended complaint are twenty-eight employees at the State Correctional Institution at Muncy (SCI-Muncy), Pennsylvania, Plaintiff's former place of confinement. The bulk of the complaint sets forth claims of inadequate medical and dental care spanning the period of August of 2006 through October of 2008. Also alleged are claims of excessive force and retaliation. The allegations contained in Plaintiff's complaint follow.

According to Plaintiff's complaint, Plaintiff was refused medical treatment for approximately two months beginning on August 28, 2006, by Defendants Fabian and Himmelsbach.  Plaintiff did ultimately receive a fifteen minute consultation with a physical therapist, after which she was told to sign up for sick call if she needed further treatment. Between approximately November of 2006 and April of 2007, Plaintiff signed up to see the therapist, but Defendants Himmelsbach, Fabian, Brown, and Diggan refused her requests.  As a result of the alleged inattention, Plaintiff claims that her hand and foot are permanently "messed up" and that she walks with a limp.  Plaintiff further alleges that these same Defendants took Plaintiff's wheelchair and cane from her in early 2007.  Due to Defendants' actions, Plaintiff asserts that she suffered excruciating pain and falls when she was forced to walk the prison campus.   In addition, at some point between January and April of 2007, Himmelsbach issued a "no smoking roommate" order for Plaintiff, but Defendant Lieutenant Boyer allegedly refused to follow the order.

Beginning on August 28, 2006, Plaintiff claims that Defendant Nelms, the prison dentist, refused to order "partials" for Plaintiff.  Plaintiff states that she may have problems in the future because her back tooth has too much stress on it without the "partials."  Nelms also allegedly refuses to perform a root canal on one of Plaintiff's teeth, and wants to pull it.  From November of 2006 through April of 2008,  Defendant Nicola, the dental hygienist, refused to put Plaintiff on the list to have her teeth cleaned.  Although the American Dental Association recommends teeth cleanings every six months, Nicola informed Plaintiff that cleanings are administered every two (2) years due to prison overcrowding and the lack of available transportation.  As a result, Plaintiff complains that her expensive porcelain veneers are now yellow.  She further states that

Dr. Famiglio told her that she has gingivitis, and that from April of 2007 through April of 2008, Nelms refused her requests for dental sick call. In addition, Plaintiff asserts that at times between August of 2007 and April of 2008, Defendant Pinard refused to allow her to brush her teeth.

According to Plaintiff, Dr. Famiglio refused to provide her with x-rays and other medical treatment for her back, hand, ankles, knee, hips, and toes from August of 2007 through April of 2008. As punishment for "misbehaving," Famiglio also allegedly stopped medical orders he had previously issued, and refused to go over the results of Plaintiff's medical tests with her. On one occasion between August and October of 2008, Famiglio had Plaintiff held down so that blood could be drawn from her without a court order. Plaintiff alleges that the blood was drawn from the groin area in the presence of male officers. She also claims that Famiglio refused to treat "pimply things all over [her] arms, back, buttocks, and legs." The complaint further states that he refused to perform a complete physical despite Plaintiff's claims she looked sickly and had lost over 100 pounds.

Beginning in April of 2007, Plaintiff claims Defendants B. Mensch, N. Mensch, Jarrett, Boyer, Otte and Welshans (Chance) gave her the wrong medications and dosages. They also crushed her medication without being ordered to do so. Defendant Eagan is alleged to have refused Plaintiff medical treatment and sick call when she signed up. Defendant DiLella is claimed to have refused Plaintiff's medication as "punishment." Plaintiff further claims that following an assault by staff members in August of 2007, Defendants Mensch, Mensch, Jarrett, Saar, Ragar, and Johnson refused to call medical or treat Plaintiff. Defendant Smith refused to make arrangements to have Plaintiff taken to medical appointments from the RHU to the main prison campus. Also, Defendant Gamble refused to go over Plaintiff's medical records with her

because she was in the RHU. Beginning in August of 2007, Defendants Little (Stroup) and Ms. Johnson refused to put Plaintiff on the list to have her eyes checked and get glasses. She claims her eyesight has now deteriorated.

Finally, Plaintiff contends that Defendants Wood and Shiptowski, both prison psychiatrists, refused to order the correct medications for her, and as a result she was unstable for a long time. Although she told Defendants what medication would work, they refused to order it or get her psychiatric records from the doctor who treated her prior to confinement. Based on the foregoing, Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.[1]

## II.   Discussion

### A.   Motions for Counsel

Currently pending are Plaintiff's fourth and fifth requests for the appointment of counsel. (Doc. Nos. 87, 110.) She filed her fourth motion for counsel on the same day that she filed the second amended complaint. In the motion, she cites many of the same reasons in support of her motion as she has offered before: her limited access to the law library, her psychological problems, her inability to afford her own lawyer, the limitations incarceration inflicts upon her, and several others. The fifth request for counsel pending is part of Plaintiff's brief in response to Defendants Wood and Shiptowski's motion to dismiss. It is a general request for counsel and does not contain supporting reasons. The Court will not repeat the standard used in deciding these motions since it has been thoroughly set forth in addressing Plaintiff's earlier motions for

---

[1] Any claim for injunctive relief is now moot. Where a plaintiff seeks injunctive relief against prison officials whose control he is no longer subject to or against a prison in which he is no longer housed, there is no longer a live controversy and a court cannot grant that injunctive relief. See Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998).

counsel.

Many of the reasons given by Plaintiff in support of the pending motions have been previously addressed and rejected by the Court. The only new arguments set forth are with respect to Plaintiff's "failing" vision, interference by prison employees with her legal materials, and her inability to obtain paper and envelopes to mail documents to the Court. These new arguments do not persuade the Court that the appointment of counsel is warranted at this time. First, Ball is no longer confined at SCI-Muncy. As such, any problems she may have been experiencing with the SCI-Muncy staff are no longer an issue. Further, to the extent that she claims she has difficulty obtaining writing supplies, the docket in this case as well as the others presently pending before this Court reveal no difficulty is accessing paper and mailing documents. While Plaintiff claims that her vision is failing, her submissions suggest that she is clearly capable of preparing and submitting documents to the Court. In addition, to the extent that she claims that Defendants are thwarting her efforts to obtain an eye exam and corrective lens, her allegations are moot because she is no longer confined at SCI-Muncy. For these reasons, the pending requests for the appointment of counsel will be denied, but without prejudice.

   **B.**  **Motion for Injunctive Relief**

Plaintiff has filed a motion seeking injunctive relief based upon Defendants' continuing unconstitutional actions as set forth in the complaint. (Doc. No. 88.) She specifically references Defendants failure to provide her with eye care. She claims that the failure of the Court to issue an order directing Defendants to schedule her for an eye appointment will result in the further deterioration of her vision. In her brief in support of injunctive relief, she also seeks an order

directing Defendants to provide her with dental care in the form of partials and teeth cleaning. (Doc. No. 89 at 1.)  For the reasons that follow, the motion will be denied.

An injunction is an "extraordinary remedy" that is never awarded as of right. Winter v. Natural Resources Defense Council, 555 U.S. 7, 129 S. Ct. 365, 375 (2008).  The Third Circuit Court of Appeals has outlined four factors that a court ruling on a motion for a preliminary injunction must consider: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006); Crissman v. Dover Downs Entertainment Inc., 239 F.3d 357, 364 (3d Cir. 2001); see also United States v. Bell, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003).  These same factors are used to determine a motion for a temporary restraining order. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).  It is the moving party that bears the burden of satisfying these factors. Adams v. Freedom Forge Corp., 204 F.3d 475, 486 (3d Cir. 2000).  While each factor need not be established beyond a reasonable doubt, they must combine to show the immediate necessity of injunctive relief. Stilp v. Contino, 629 F. Supp. 2d 449, 457 (M. D. Pa. 2009), citing Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002).  The moving party must produce evidence sufficient to convince the court that all four factors favor injunctive relief, and the court must endeavor to balance all four factors.  However, as a practical matter, likelihood of success on the merits and irreparable injury are the most important factors. See Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 & n. 8 (3d Cir. 1994).

Without unnecessary elaboration, Plaintiff has failed to make a clear showing that there is a likelihood of success on the merits, and that she will suffer irreparable injury if her motion is denied. First, her request for injunctive relief is now moot based upon her transfer to SCI-Cambridge Springs. As set forth earlier, it is well established that where a plaintiff seeks injunctive relief against prison officials whose control he is no longer subject to or against a prison in which he is no longer housed, there is no longer a live controversy and a court cannot grant that injunctive relief. See Abdul-Akbar, 4 F.3d at 206; Fortes, 19 F. Supp. 2d at 326. Moreover, the motion is simply a reiteration of the pending second amended complaint. Clearly Plaintiff has an adequate remedy at law, as she is utilizing that remedy, and there is no indication that she will suffer irreparable harm before a decision on the merits can be rendered. For these reasons, the pending motion for injunctive relief will be denied.

  C. **Motions to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.

1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v. Iqbal, ___U.S.___, 129 S.Ct. 1937, 1949 (2009) (explaining that Rule 8 requires more than "an unadorned, the defendant-unlawfully-harmed-me accusation."); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556). Under this pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### 1.     Motion to Dismiss filed by Defendants Wood and Shiptowski

The only allegation Plaintiff sets forth with respect to Defendants Wood and Shiptowski is that they refused to order the correct psychiatric medications for Plaintiff, despite her informing them what would work. In so doing, Plaintiff claims Defendants refused to speak

with her former doctor to see what medications he prescribed, and would not order the medications Plaintiff desired due to cost. (Doc. No. 86 at 5.) Defendants have filed a motion to dismiss on the basis of failure to state a claim pursuant to Rule 12(b)(6). (Doc. No. 91.)

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192,197 (3d Cir.1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish a violation based on the Eighth Amendment, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The "deliberate indifference" standard is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The test for whether a prison official was deliberately indifferent is whether that defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 841. Only egregious acts or omissions can violate this standard. See White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990).

A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the

Eighth Amendment . . . ." Estelle, 429 U.S. at 106. "Allegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill, 372 F.3d at 235. An inmate's disagreement with medical treatment also does not rise to the level of "deliberate indifference." See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

If a prisoner is under the care of medical experts, non-medical prison officials are justified in believing the prisoner is being treated properly and is in capable hands. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). "Absent a reason to believe (or actual knowledge) that . . . doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. at 236; Durmer, 991 F.2d at 67. Non-medical personnel cannot be held to be deliberately indifferent merely because they fail to respond to complaints of an inmate already being treated by prison medical staff. Gusman v. Bureau of Prisons, 231 F. App'x 179, 181 (3d Cir. 2007). In the absence of some indication that treatment is not occurring or was inappropriate, the non-medical prison official cannot be found deliberately indifferent. Spruill, 372 F.3d at 236.

Wood and Shiptowski move to dismiss Plaintiff's claims against them on the ground that she fails to allege facts establishing that they knew that their conduct posed a substantial risk of harm. Rather, they argue that Plaintiff disagrees with the type of psychiatric care she received from them. For the reasons that follow, the Court agrees.

The complaint fails to allege any facts demonstrating that Defendants knew their conduct presented a substantial risk of harm. Plaintiff admits that Defendants provided her with

medications, but disagrees with the type of medications prescribed. She complains that they were not the same medications provided by her former doctor. Mere disagreement with the medications prescribed does not state a constitutional violation. Even though Plaintiff may have had a different prescription prior to incarceration, this does not support an Eighth Amendment claim for deliberate indifference. Mere difference in opinion between Plaintiff and her doctor regarding the proper course of treatment does not state a claim. See Snipes v. DeTella, 95 F.3d 586, 590 (7th Cir. 1996), cert. denied, 519 U.S. 1126 (1997); Douglas v. Stanwick, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000). Likewise a doctor's disagreement with the professional judgment of another doctor, standing alone, is not actionable under the Eighth Amendment. See White v. Napolean, 897 F.2d 103, 110 (3d Cir. 1990).

To the extent Plaintiff claims Defendants were deliberately indifferent in failing to obtain her records from her psychiatrist "on the street," there are no allegations to establish that the failure to do so presented a substantial risk of harm to her. At best, she sets forth a claim of negligence which is not actionable under the Eighth Amendment. While Plaintiff also maintains that cost was a factor in Defendants' decision what medication to prescribe for her, she admits she was provided with medications, and does not assert facts demonstrating knowledge on Defendants' part that the drugs they did prescribe (as opposed to more expensive drugs) presented any substantial risk of harm to her or were any less effective. At best, Plaintiff sets forth a claim of negligence. For these reasons, Shiptowski and Wood's motion to dismiss will be granted.

    **2.**    **Motion to Dismiss filed by Medical Defendants**

Also pending is a motion to dismiss filed by Medical Defendants Famiglio, Fabian,

Eagan, Himmelsbach, Little (Stroup), and J. Johnson.[2] (Doc. No. 93.) In filing their motion, Defendants allege that Plaintiff has failed to allege any facts demonstrating: (1) any serious medical need requiring attention or treatment; or (2) the requisite culpable state of mind demonstrating deliberate indifference on the part of Defendants. They further note that Plaintiff failed to allege that Little or Johnson denied her any treatment and that Plaintiff conceded that Dr. Famiglio did provide her with treatment. (Doc. No. 94 at 5.) Based on the foregoing, they move to dismiss the Eighth Amendment claims against them.

In reviewing the complaint, the Court finds that the claims set forth against Himmelsbach and Fabian are sufficient to survive the pending motion to dismiss. Plaintiff first claims that she was made to wait over two (2) months for a physical therapy appointment. Thereafter, Defendants denied her sick call requests to schedule follow up visits for approximately five (5) months. As a result, Plaintiff claims that her hand and foot are permanently injured, and she now walks with a limp. She further alleges that said Defendants took a wheelchair and cane from her, causing her to endure pain. Without passing judgment as to the ultimate merits of these claims, they will be permitted to proceed.

Defendants next contend that the claims set forth against Dr. Famiglio are subject to dismissal in that Plaintiff fails to allege any serious medical condition. However, in reading the complaint as a whole, including Plaintiff's allegations that during the relevant time period she

---

[2] In filing the motion, Defendants address the claims set forth in the second amended complaint with respect to Famiglio, Fabian, and Himmelsbach, but contend that the complaint fails to contain allegations with respect to Eagan, Little, or Johnson. A review of the complaint clearly reveals that Defendants are mistaken. Plaintiff alleges that Eagan refused her medical treatment and sick call beginning in April of 2008, and that Johnson and Little refused to put her on the list to have her eyes checked beginning in August of 2007. (Doc. No. 86 at 4.)

had used a wheelchair and a cane, and lost over 100 pounds, the Court finds that the claims should be permitted to proceed.

Defendants also argue that Plaintiff fails to set forth any allegations against Defendants Eagan, Little, or Jennifer Johnson. However, the complaint does contain a sweeping allegation that Eagan refused Plaintiff medical treatment and sick call when she signed up and alleges that Little and Johnson refused to place Plaintiff on the list to for an eye examination from August of 2007 through April of 2008. Because of Little and Johnson's actions, Plaintiff contends her vision has deteriorated. The claim against Eagan will be dismissed in that it clearly fails to provide any facts demonstrating that Plaintiff is entitled to relief. Further allowance to amend will not be permitted to set forth a viable claim. This is the third attempt at setting forth a cause of action against Defendants. Plaintiff has been sufficiently advised as to what is required to cure the deficiencies in her complaint. Her broad, conclusory allegations of constitutional deprivation are typical examples of "an unadorned, the defendant unlawfully-harmed-me accusation[s]" that cannot survive a motion to dismiss. See Ashcroft, 129 S. Ct. at 1949. However, the claims set forth against Little and Johnson, will proceed. For all of these reasons, the motion to dismiss filed by the Medical Defendants will be granted in part and denied in part.

    3.    **Motion to Dismiss filed by Remaining Corrections Defendants**[3]

The Court will now address the motion to dismiss filed by the remaining Corrections Defendants named in this action. (Doc. No. 96.) Defendants move for the dismissal of the claims against them on the ground that Plaintiff has failed to allege a case of deliberate

---

[3] The Court notes that Defendants do not move to dismiss the claims against Defendant Pinard in the pending motion.

indifference. The non-medical staff maintains that the claims against them are also subject to dismissal in that they reasonably relied on the decisions of the medical staff. Further, Defendants argue that the standing complaint is silent with respect to Defendants B. Mensch, N. Mensch, Jarrett, Otte, Welshans (Chance), Nurse Boyer, and Gamble.[4] In light of the Eighth Amendment standards set forth above, the Court will now address Defendants' motion.

Defendants first argue that Nicola, the dental hygienist at SCI-Muncy, did not violate Plaintiff's Eighth Amendment rights in failing to clean her teeth more than every two years. They claim that the failure to clean teeth does not amount to a serious medical or dental need and, even if it did, any such violation would be de minimis. Plaintiff argues that the American Dental Association recommends that individuals have their teeth cleaned once every six months. She complains that her porcelain veneers are now all "yellow and nasty." (Doc. No. 86 at 2.) A teeth cleaning is not usually considered to be a serious medical/dental condition. Rather, a professional teeth cleaning is a preventative procedure. See Brooks v. Padula, Civ. No. 6:09-0992, 2010 WL 3257937, at *6 (D.S.C. June 24, 2010). In the present action, Plaintiff has failed to allege that the denial of her request to receive dental cleanings has resulted in any life-threatening medical problem or serious injury. See, e.g., James v. O'Sullivan, 62 F. App'x. 636, 639 (7th Cir. 2003) (requiring a prisoner to show "that the prison's denial of hygiene and cleaning supplies constituted an objectively excessive risk to health and safety" to state an Eighth Amendment claim); McCoy v. Willis, Civ. No. 4:07-cv-3563, 2008 WL 4221745, at *4 (D.S.C. Sept. 15, 2008) (concluding the denial of a dental cleaning does not violate the Eighth

---

[4] The Court disagrees in that a review of the second amended complaint clearly reveals allegations set forth with respect to these Defendants.

Amendment where plaintiff failed to provide evidence that the denial of dental cleaning caused him to suffer life-threatening medical problem or serious injury). Accordingly, the motion to dismiss this claim must be granted.

The claims against Dr. Nelms will likewise be dismissed. Plaintiff alleges that Nelms refuses to order her "partials," and fears this will cause her dental problems in the future. She further claims that she wants a root canal performed on one of her teeth, but Nelms wants to pull the tooth. Based on the foregoing, Plaintiff clearly does not allege that she is not receiving dental care from Nelms. Rather, she disagrees with the decisions of Nelms, and the treatment being offered. An inmate's disagreement with treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). Rather, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners. Id. at 67. Further, with respect to the treatment provided by Nelms, negligence, unsuccessful medical treatment or medical malpractice do not give rise to a § 1983 action. As such, the claims against Nelms will be dismissed.

Plaintiff alleges that Defendants Brown and Diggan took her wheelchair and cane from her between January and April of 2007, despite her excruciating pain. She states that she was forced to walk the "huge campus" of the prison and suffered pain and falls because of Defendants' actions. For the reasons previously set forth with respect to these same allegations against Defendants Himmelsbach and Fabian, the claims will also proceed with respect to Brown and Diggan. While Defendants maintain that they were simply following doctors' orders, this is not evident from the face of the complaint. Accordingly, the Court will permit Plaintiff the opportunity to support her claim. In addition, the claims set forth against Brown and Diggan

regarding the denial of physical therapy will also be permitted to proceed for the reasons discussed above.

Defendants next move to dismiss Plaintiff's claims that Nurses DiLella and Green had her medications stopped many times as punishment. This general allegation fails to set forth a viable claim of inadequate medical care. Plaintiff asserts no facts with respect to what medications were allegedly stopped, the time periods and durations of the alleged conduct, and what injury, if any, she suffered as a result of Defendants' actions. Further, in liberally reading the complaint to allege retaliation, Plaintiff also fails to state a claim. In order to state a claim of retaliation, a plaintiff must satisfy three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, an inmate plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah v. Seiverling, 228 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "'sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" Id. at 333 (quoting Allah, 229 F.3d at 225). Third, a prisoner plaintiff must prove that "his constitutionally protected conduct was 'a motivating factor' in the decision to discipline him." Id. at 333 (quoting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)); Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000). This is Plaintiff's third submission of a complaint in this action. She still fails to allege enough facts to raise a reasonable expectation that discovery will reveal evidence of the elements necessary to establish a claim of retaliation. At no point does Plaintiff allege that she was engaged in a constitutionally protected activity when Defendants "punished" her. As such,

these claims are subject to dismissal.[5]

Defendants argue that Plaintiff fails to set forth any allegations against B. Mensch, N. Mensch, Jarrett, Otte, Welshans, Gamble, and Nurse Boyer. A reading of the complaint reveals otherwise. All of these Defendants, with the exception of Gamble, are alleged to have given Plaintiff the wrong dosages of medication, and to have crushed medication when there were no orders to do so. (Doc. No. 86 at 4.) These claims will be dismissed in that, at best, they amount to nothing more than negligence. The complaint simply does not contain any facts to suggest that Defendants acted with deliberate indifference.

Plaintiff claims that Defendant Gamble refused to go over her medical records with her. Gamble is the Medical Records Technician at SCI-Muncy. While inmates have a constitutional right to access to medical care, see Estelle, 429 U.S. at 104-05, there is no authority for an Eighth Amendment right to review medical records. Accordingly, this claim will be dismissed for failure to state a claim.

There are additional claims with respect to the above Defendants that will be allowed to proceed. Plaintiff's claim that in August of 2008 Defendants Welshans and Otte left restraints on her extremely tight resulting in bruises, cuts, scars, and permanent problems with her wrists, ankles and feet will proceed. In addition, the claim that Defendants Mensch, Mensch, and Jarrett refused to provide treatment to Plaintiff following an assault by staff in August of 2007 will also go forward. Plaintiff asserts similar claims with respect to Sergeants Rager, Saar, and Johnson. She claims they also refused to alert medical personnel following her assault by staff.

---

[5] The same analysis applies to the retaliation claim Plaintiff generally sets forth against Defendant Famiglio. Accordingly, it will also be dismissed.

Defendants argue that it is "possible" said individuals were merely negligent or did not contact medical personnel because other officers had already done so. However, in accepting the allegations in the complaint as true, and drawing all reasonable inferences therefrom in favor of Plaintiff, this claim will be allowed to proceed.

Finally, Defendants seek to dismiss the claim that Lieutenant Boyer failed to follow the order of Defendant Himmelsbach to cell Plaintiff with a non-smoking inmate. Plaintiff argues that Defendant failed to follow this order from January 2007 through April of 2007, and that Boyer's intentional conduct subjected her to "inmates [who] smoked like chimneys." In opposing the motion to dismiss, Plaintiff references an asthma condition, indicating a possible reason for the order regarding a non-smoking inmate. Out of an abundance of caution, the Court will also allow this claim to proceed. Based on the foregoing, the motion to dismiss filed by the remaining Corrections Defendants will be granted in part and denied in part. As appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN MARIE BALL,** | : | **CIVIL NO. 1:CV-08-0700** |
| Plaintiff, | : | |
| | : | **(Chief Judge Kane)** |
| v. | : | |
| | : | |
| **DR. FAMIGLIO, <u>et</u> <u>al</u>.,** | : | |
| Defendants | : | |

## ORDER

**AND NOW, THEREFORE, THIS 31st DAY OF APRIL, 2011,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiff's Motions for Counsel (Doc. Nos. 87, 110) are **denied without prejudice**.

2. Plaintiff's Motion for Injunctive Relief (Doc. No. 88) is **denied.**

3. The motion to dismiss filed by Defendants Wood and Shiptowski (Doc. No. 91) is **granted**. All claims set forth against Wood and Shiptowski are dismissed in their entirety.

4. The motion to dismiss filed by the Medical Defendants (Doc. No. 93) is **granted in part and denied in part** in accordance with the attached Memorandum. All claims set forth against Defendant Eagan are **dismissed** in their entirety. The retaliation claim set forth against Defendant Famiglio is **dismissed**. The remaining claims set forth against Defendants Himmelsbach, Fabian, Famiglio, Little and J. Johnson will proceed.

5. The motion to dismiss filed by the remaining Corrections Defendants (Doc. No. 96) is **granted in part and denied in part** in accordance with the attached Memorandum. All claims set forth against Defendants B. Mensch, N. Mensch, Gamble, Nurse Boyer, Jarrett, Nelms, DiLella, Nicola, and Green are **dismissed** in their entirety. The inadequate medical care claim against Defendants Otte and Welshans is **dismissed**, but the excessive force claim will proceed. All other claims against the remaining Corrections Defendants will proceed.

6. Defendants are directed to file an answer to the remaining claims in this action

within twenty (20) days.   Thereafter, the Court will impose discovery and dispositive motions deadlines.

_____
YVETTE KANE, Chief Judge
Middle District of Pennsylvania