## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN BALL, | : | Civil No. 1:08-CV-700 |
| | : | |
| Plaintiff, | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| SCI MUNCY, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

#### A.    Introduction

The plaintiff, Dawn Ball, is an inmate housed in the Restricted Housing Unit at the State Correctional Institution (SCI) Muncy, who by her own account suffers from a cascading array of severe mental illnesses, and candidly acknowledges that she is profoundly disturbed, informing the Court that:

> My mental health is declining. I suffer from OCD so bad I scrub my hands till they bleed, confusion, PTSD, disassociative disorder, I smell, see and hear things not there, severely stressed, phobias, agoraphobia, severe anxiety, lack of interest in things, lack of arousal in thing, racing thoughts, suicidal, cognitive problems and disorders, lack of interest in life, disoriented, dizzyness, paranoid–schizophrenic, constant worry, frightened scared, can't properly care for myself, tics, bipolar, manic depressive, mood swings that are so severe, can't think clearly....

Ball v. Beard, No. 1:09-CV-845, (Doc. 42,  pp. 6-7)

While she suffers from paranoia, schizophrenia, and experiences these visual and auditory hallucinations, Ball is also a prodigious federal court litigant, bringing numerous lawsuits based upon her perception of the events that take place around her in prison.  Indeed, at present Ball has a total of sixteen lawsuits pending before this Court.[1]

Ball is also a prodigiously unsuccessful litigant, who has had at least three prior lawsuits dismissed either for failure to exhaust her administrative remedies, or as frivolous on the grounds that the lawsuit failed to state a claim upon which relief could be granted.  The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began in March of 2008, when Ball filed a complaint in the case of Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.).  On December 10, 2008, the district court dismissed this civil action for failure to exhaust her administrative remedies, Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 36), and on July 22, 2010, the

---

[1]See, e.g., Ball v. SCI Muncy, No.1:08-CV-700 (M.D.Pa.); Ball v. SCI-Muncy, No. 1:08-CV-701 (M.D.Pa.); Ball v. Hill, No.1:09-CV-773 (M.D.Pa.); Ball v. Beard, No. 1:09-CV-845 (M.D.Pa.); Ball v. Lamas, No. 1:09-CV-846, (M.D. Pa.); Ball v. Oden , No 1:09-CV-847 (M.D.Pa.); Ball v. Bower, No. 1:10-CV-2561 (M.D.Pa.); Ball v. Sisley, No. 1:11-CV-877 (M.D.Pa.); Ball v. Struther, No. 1:11-CV-1265 (M.D.Pa.); Ball v. Hummel, No. 1:11-CV-1422 (M.D.Pa.); Ball v. Beckley, No. 1:11-CV-1829 (M.D.Pa.); Ball v. Sipe, No. 1:11-CV-1830 (M.D.Pa.); Ball v. Craver, No. 1:11-CV-1831 (M.D.Pa.); Ball v. Powley, No. 1:11-CV-1832 (M..D.Pa.); Ball v. Cooper, No. 1:11-CV-1833 (M.D.Pa.); Ball v. Famiglio, No. 1:11-CV-1834 (M.D.Pa.)

United States Court of Appeals for the Third Circuit affirmed the dismissal of this action. Ball v. SCI Muncy, No. 1:08-CV-391 (M.D. Pa.) (Doc. 44)

On May 5, 2009, Ball filed a second civil action in the case of Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.). This action was dismissed by the district court, which found Ball's complaint to be frivolous, Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Docs 32, 33, and 36) and Ball's appeal of this dismissal order was summarily denied by the court of appeals pursuant to 28 U.S.C. § 1915(e)(2)(B).[2] Ball v. Hartman, No. 1:09-CV-844 (M.D. Pa.) (Doc. 48)

While this action was pending, Ball filed yet another lawsuit in the case of Ball v. Butts, No. 1:11-CV-1068, (M.D.Pa.) on June 3, 2011. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 1). On June 15, 2011, upon a screening review of this complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 8). Ball appealed this dismissal. Ball v. Butts, No. 1:11-CV-1068 (M.D.Pa.)(Doc. 10) On September 21, 2011, the court of appeals entered an opinion and order dismissing Ball's appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B). That appellate court opinion and

---

[2]28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious." Thus the appellate court's October 29, 2010, ruling was tantamount to a declaration that this action was also frivolous.

order spoke unambiguously regarding the frivolous nature of this particular lawsuit

filed by Ball, stating in clear and precise terms that:

> Because we too have granted Ball leave to proceed IFP, we must screen this appeal to determine whether it is frivolous. See 28 U.S.C. § 1915(e)(2)(B)(I). An appeal is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).This appeal lacks any such basis. As the District Court adequately explained, immunity extends even to judicial acts that are "done maliciously," and Ball has alleged nothing suggesting that Judge Butts acted in the "clear absence of all jurisdiction." Gallas v. Supreme Court of Pa., 211 F.3d 760, 769 (3d Cir.2000) (citation and internal quotation marks omitted). To the extent that Ball's request for injunctive relief might not have been subject to dismissal under § 1915(e)(2)(B)(iii), it was subject to dismissal under § 1915(e)(2)(B)(ii) because such relief is not available against "a judicial officer for an act ... taken in such officer's judicial capacity" under these circumstances. 42 U.S.C. § 1983. Finally, we are satisfied that any amendment of Ball's complaint would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir.2002). Thus, we will dismiss this appeal

Ball v. Butts, No. 11-2862,  2011 WL 4375782, 1 (3d Cir. Sept 21, 2011).

## B.    Ball's Current Lawsuit

It is against this backdrop that Ball instituted the current lawsuit.  Ball first filed

this complaint on April 14, 2008, (Doc. 1), and later amended her complaint on March

12, 2010.(Doc. 86) This amended complaint originally addressed issues at SCI-Muncy

up through March 2008, named twenty-eight defendants, and lodged an array of claims

against these defendants relating to the quality of the medical care Ball was receiving

between 2006 and 2008. (Id.)

Through the process of pre-trial litigation the number of claims and defendants remaining in this litigation has been narrowed significantly.  In a series of rulings, the district court dismissed numerous defendants and claims from this lawsuit. (Docs. 116 and 140)  In particular, the district court dismissed all claims against corrections defendants Gamble, Boyer, Nelms, and Green; and dismissed all the inadequate medical care claims against defendants Otte and Welshans, while allowing the excessive force claims leveled against these particular corrections defendants to proceed. (Id.)  As for the medical defendants all claims against defendant Eagan were dismissed, as were the retaliation claims leveled against defendant Famiglio.  However, the remaining inadequate medical care claims proceeded forward. (Id.) Thus, in its current from, Ball's complaint names approximately thirteen department of corrections medical and correctional staff as defendants, (corrections defendants)[3], along with five contract health care providers who worked at the prison and provided medical treatment to Ball. (Medical defendants).[4]

As to these defendants, the remaining claims advanced by Ball fall into several broad categories:  First, Ball alleges that some prison and contract medical staff denied

---

[3]These corrections defendants include Gloria Diggin, R.N., Brian Mench, Mrs. Mench, Ms. Jarret, Ms. Brown, Ms. Well Chance (Welshans), Major Smith, Captain Pinard, Sgt. Ragar, Sgt. Saar, Sgt. Johnson, Lt. Boyer, and Nurse Candy Ott (Otte).

[4]These medical defendants include: Dr. Famiglio, P.A. Himmelsbach, Erica Stroup (Little), Dr. Fabian, and Ms. Johnson..

her appropriate care and treatment for various medical and dental problems. Specifically, Ball complains that medical staff curtailed her use of a cane and wheelchair in 2007, and either delayed, denied or failed to provide adequate treatment for an array of medical complaints between 2006 and 2008. Further, Ball seems to allege that some staff used excessive force against her by painfully confining her in a restraining chair for lengthy periods of time when she was being disruptive in the prison medical unit in 2007. In addition, Ball contends that non-medical correctional staff defendants refused to call for medical treatment following incidents in which Ball alleges that she was injured by prison staff.

### C.    The Instant Summary Judgment Motions

The corrections (Doc. 182) and medical (Doc. 177) defendants have now moved for summary judgment as to Ball's remaining claims. These summary judgment motions raise two defenses to Ball's claims.

First, the defendants assert that these claims fail because Ball has not exhausted her administrative remedies with respect to the claims and defendants named in the complaint. With respect to this issue, the undisputed facts[5] reveal that Ball was a prolific, but confusing and careless grievant, whose grievances were rarely pursued in a coherent, comprehensive, and timely fashion.

---

[5]Ball's response to these summary judgment motions does not in any meaningful fashion address these administrative exhaustion issues. (Doc. 211)

For example, the corrections defendants have conducted a thorough review of Ball's grievance history in 2007 and 2008. That review concluded that Ball appealed 48 grievances to final review during this two year period, although she often filed grievance appeals in a procedurally inappropriate and untimely fashion. (Doc. 184, Varner declaration ¶ 6.) Of these 48 grievances, only five appear to relate to any of the issues encompassed in Ball's current civil complaint. Of these five grievances, two of these grievance appeals were dismissed as untimely. (Id., ¶¶ 9 and 10.) Only one of these untimely grievances, the grievance submitted on April 6, 2008, named any of the remaining defendants in this lawsuit, Defendants Otte and Welshans.(Id., ¶10.) This untimely grievance appeal was submitted in August of 2008, four months after the grievance was initially filed, and three months after the grievance was denied at the institutional level. (Id.) Thus, this particular grievance appeal fell months outside the deadlines prescribed by department of corrections' policy. The remaining three grievances, which were timely exhausted, either failed to name any responsible individuals, or failed to name any person who remains a defendant in this lawsuit. (Id., ¶¶8, 11, and 12.) Thus, the corrections defendants have not been able to identify a single, fully exhausted grievance lodged against any particular corrections defendant arising out of the matters set forth in Ball's civil complaint.

Similarly, the medical defendants identified approximately five grievances submitted by Ball between January of 2007 and March of 2008 which related to their

care for the plaintiff while she was housed at SCI Muncy. (Doc. 179, ¶¶149-166)  One

grievance, dated, April 13, 2007, named defendants Himmelsbach and Fabian, but was

not appealed by Ball after it was denied at the institution and thus remained

unexhausted. (Id., ¶¶155-157)  Two additional grievances were submitted by Ball on

July 2007, but failed to identify any specific defendants, and were dismissed for failure

to comply with prison grievance policies. (Id., ¶¶149-153.)  Finally, in December of

2007, Ball submitted two grievances which complained generally about her medical

care, but failed to identify specific care-givers. (Id., ¶¶158-165.)  These grievances

were denied at the institution, and Ball's tardy grievance appeals were dismissed as

untimely. (Id.)

    In addition to moving for summary judgment on Ball's claims on administrative

exhaustion grounds, the corrections and medical defendants also seek summary

judgment on the merits, arguing that the undisputed facts reveal that Ball has failed to

state a meritorious constitutional claim against any medical or correctional defendant.

(Id.)  Ball, in turn, has responded to these summary judgment motions by arguing that

she has been denied discovery relating to the merits of her medical claims. (Doc. 211)

Ball's response to these motions raises a specific, narrow and incomplete retort to the

summary judgment motions.  Citing the alleged unavailability of certain medical

records, Ball contends that there are disputed factual issues relating to the level, nature

and degree of the medical treatment she has received which makes summary judgment

inappropriate on the merits of her medical claims. (Id.)  Yet, while Ball's response to these summary judgment motions contests the substantive merits of the defendants' summary judgment motions, it is completely silent with respect to the defendants' threshold assertion that Ball has failed to exhaust her administrative remedies before proceeding into federal court.  Therefore, these factual assertions by the defendants regarding Ball's failure to exhaust these remedies remain unrebutted by Ball.

These motions have now been fully briefed by the parties, (Docs. 177-185 and 211), and are ripe for resolution.  Finding that Ball has failed to properly, and timely, exhaust her administrative remedies with respect to the defendants and matters set forth in this complaint, for the reasons set forth below we recommend that summary judgment be entered in favor of the defendants on administrative exhaustion grounds.

## II.    Discussion

### A.    Rule 56–The Legal Standard.

The defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Through summary adjudication a court is empowered to dispose of those claims that do not

present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving

party provides merely colorable, conclusory, or speculative evidence.  Anderson, 477 U.S. at 249.  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts.  Id. at 252; see also  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment."  Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment.  With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial."  Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995).  In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court
> may only consider evidence which is admissible at trial, and that a party
> can not rely on hearsay evidence when opposing a motion for summary
> judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561
> (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection
> by demonstrating that the material would be admissible at trial under an
> exception to hearsay rule, or that the material is not hearsay. See Burgess
> v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere
> possibility that a hearsay statement will be admissible at trial, does not
> permit its consideration at the summary judgment stage. Henry v.
> Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug.

26, 2005).  Thus, a party may not rely upon inadmissible hearsay assertions to avoid

summary judgment.  Therefore, where a party simply presents inadmissible hearsay

declarations in an attempt to establish a disputed material issue of fact, courts have

typically rebuffed these efforts and held instead that summary judgment is appropriate.

See e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa.

July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,*

9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.,

256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by

. . . denying averments . . . without producing any supporting evidence of the denials."

Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted).

Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse

party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ

v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple

Univ., 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a

disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing

affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir.

1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely

upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d

338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Yet, while "only evidence which is admissible at trial may be considered in

ruling on a motion for summary judgment," Countryside Oil Co., Inc. v. Travelers Ins.

Co., 928 F.Supp. 474, 482 (D.N.J.1995), and "a party resisting a [Rule 56] motion

cannot expect to rely merely upon bare assertions, conclusory allegations or

suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), the court must

"consider all evidence in the light most favorable to the party opposing the motion."

A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). Therefore, in a case

where the parties' pleadings reveal disputes regarding the admissibility of specific

evidence, the principles governing consideration of summary judgment motions

–which enjoin us to examine the evidence in a light most favorable to the party

opposing the motion–also call upon us to resolve all genuine disputes concerning the

admissibility of specific items of evidence in favor of the party opposing the motion.

**B.** **The Prison Litigation Reform Act's Exhaustion Requirement**

The defendants first urge the Court to grant summary judgment on the plaintiff's claims because Ball failed to fully exhaust the administrative remedies available to her under Department of Corrections procedures.  In 2007 and 2008 there were established grievance procedures available to Ball in the Department of Corrections to address her medical concerns. (Doc. 184, Varner declaration.)  The administrative process that inmates were required to use to prosecute grievances was provided for in Department of Corrections Administrative Directive 804. (Id.) This grievance system is comprised of three tiers, each of which is governed by specific deadlines.  Pursuant to DC-ADM 804, the first step in the inmate grievance process is an initial review. (Id.)  At this stage, an inmate must submit a grievance within 15 working days of the event on which the grievance is based.  An inmate who is dissatisfied with the initial decision may appeal to the Facility Manager within 10 working days from the date of the initial review decision.  (Id.)  At a state correctional institution, the Facility Manager is the institution's Superintendent.  If an inmate is not satisfied with the result of the Facility Manager's review of his appeal, the inmate may appeal to final review with the Secretary's Office of Inmate Grievances and Appeals by filing an appeal with that office within 15 working days of the date of the Facility Manager's decision.  Extensions to these deadlines could be granted at the discretion of the agency if the

inmate submitted a written explanation for a failure to timely file the grievance or an

appeal.(Id.)  Furthermore, the Department of Corrections' grievance process requires

an inmate to supply a statement of facts relating to any grievance, and specifically

directs inmates to identify "any persons who may have information that could be

helpful in resolving the grievance". (Id.)   Thus, it is incumbent upon an inmate

submitting a grievance to identify, whenever possible, those staff against whom the

prisoner wishes to lodge a grievance.

　　　In this case Ball's alleged failure to timely pursue these administrative remedies

may have substantive significance for the plaintiff since the Prison Litigation Reform

Act provides that "[n]o action shall be brought with respect to prison conditions under

. . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available

are exhausted." 42 U.S.C. § 1197e(a). Section 1997e's exhaustion requirement applies

to a wide-range  of inmate complaints, including damages complaints like those made

by Ball grounded in alleged violations of the Eighth Amendment.  See Spruill v. Gillis,

372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir. 2000).  While

this exhaustion requirement is not a jurisdictional bar to litigation, this requirement is

strictly enforced by the courts.   This rigorous enforcement is mandated by a

fundamental recognition that § 1997e's exhaustion requirement promotes important

public policies.  As the United States Court of Appeals for the Third Circuit has noted:

Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include (1) avoiding premature interruption of the administrative process and giving the agency a chance to discover and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a). ... [A] a comprehensive exhaustion requirement better serves the policy of granting an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Moreover, "even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice" or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prisoner obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency. . . . Moreover, even if only a small percentage of cases settle, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto. . . . In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000)(citations omitted).

Because of the important policies fostered by this exhaustion requirement, it has been held that there is no futility exception to § 1997e's exhaustion requirement. Id. Instead, courts have typically required across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue claims in federal court.

Moreover, courts have also imposed a procedural default component on this exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004).  Applying this procedural default standard to § 1997e's exhaustion requirement, courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court.  See e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

Furthermore, applying this  procedural default component to the exhaustion requirement,  Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), it has been held that:

> As for the failure to the identify named defendants on the grievance form, . . . to the extent the identity of a defendant was "a fact relevant to the claim," Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the  PLRA.

<u>Williams v. Pennsylvania Dep't. of Corrections</u>, 146 F. App'x 554, 557 (3d Cir. 2005).[6]

Thus, "it is clear, regardless of the purpose of the requirement, that <u>Spruill</u> requires the

prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain

of procedural default." <u>Hemingway v. Ellers</u>, No. 07-1764,  2008 WL 3540526, *11

(M.D.Pa. Aug.12, 2008).

    This broad rule favoring full exhaustion admits of  one, narrowly defined

exception.  If the actions of prison officials directly caused the inmate's procedural

default on a grievance, the inmate will not be held to strict compliance with this

exhaustion requirement. <u>See</u> <u>Camp v. Brennan</u>, 219 F.3d 279 (3d Cir. 2000). However,

case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an

inmate's] failure to exhaust as the statute requires." <u>Davis v. Warman</u>, 49 F. App'x

365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust will only be excused

"under certain limited circumstances",  <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d

Cir. 2005), and an inmate can defeat a claim of  failure to exhaust only by showing "he

was misled or that there was some  extraordinary reason he was prevented from

complying with the statutory mandate." <u>Davis v. Warman</u>, <u>supra</u>,  49 F. App'x at 368.

<u>See also</u>, <u>Brown v. Croak</u>, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner

_____

    [6]While the <u>Williams</u> decision is not precedential, it is highly persuasive as a
"paradigm of the legal analysis [this Court] should . . . follow." <u>Drinker v.
Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996). We find the reasoning in
<u>Williams</u> compelling, and recommend that this reasoning be extended to the instant
case.

with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); <u>Camp v. Brennan</u>, 219 F.3d 279, 281 (3d Cir. 2000) (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and uncontradicted correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts.  Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. <u>Davis v. Warman,</u> 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. <u>Casey v. Smith</u>, 71 F. App'x 916 (3d Cir. 2003).  Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. <u>Oliver v. Moore</u>, 145 F. App'x 731 (3d Cir. 2005)(failure to exhaust not excused if, after staff

allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

Thus, in this setting, the Prison Litigation Reform Act requires that an inmate fully exhaust her administrative remedies before proceeding into federal court, an administrative exhaustion requirement which entails full compliance with state grievance procedures and timelines, as well as the basic requisite that the inmate identify those against whom she has a grievance during the administrative process before she may name these individuals as defendants in a federal lawsuit.

## C. Ball Has Failed to Properly Exhaust Her Administrative Remedies.

Judged against these guideposts, we find that the defendants are entitled to summary judgment in their favor on the grounds that Ball has failed to satisfy the PLRA's administrative exhaustion requirement.  In this regard, we note that Ball's response to these summary judgment motions does not in any meaningful way contest or address the factual underpinnings of the failure-to-exhaust claims raised by the defendants.  Therefore, as to these claims, there appear to be no disputed material issues of fact.

Moreover, we conclude on these undisputed facts that the defendants are entitled to judgment in their favor as a matter of law.  The undisputed facts show that Ball was

an erratic, but prodigious, grievant, who filed multiple grievances, but rarely followed through on her complaints in a timely, comprehensive and comprehensible manner.

For example, of the 48 grievances identified by the defendants that were submitted by Ball in 2007 and 2008, the vast majority of these grievances either failed to identify any responsible parties, or did not identify the currently named defendants as responsible parties, and thus violated Pennsylvania institutional grievance procedures which require inmates to identify "any persons who may have information that could be helpful in resolving the grievance."  This is a legally significant failing since as a matter of law, "a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the  PLRA." Williams v. Pennsylvania Dep't. of Corrections, 146 F. App'x 554, 557(3d Cir. 2005); Hemingway v. Ellers, No. 07-1764,  2008 WL 3540526, *11 (M.D.Pa. Aug.12, 2008).  Therefore, none of these grievances can be considered properly exhausted, and none of these grievances comply with the PLRA's statutory mandate that "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1197e(a).

Of the remaining grievances lodged by Ball, many either are not fully exhausted or are dismissed because Ball's grievance appeals were wholly untimely, and violated

the PLRA's procedural default component on this exhaustion requirement, which holds that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court; Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), and concludes that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. See e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006). For example, with respect to the corrections defendants, only one of these grievances, the grievance submitted on April 6, 2008, named any of the remaining defendants in this lawsuit: Defendants Otte and Welshans. (Doc. 184, Varner declaration, ¶10) However, this untimely grievance appeal was submitted in August of 2008, four months after the grievance was initially filed, and three months after the grievance was denied at the institutional level. (Id.)   Therefore, Ball plainly procedurally defaulted on this particular grievance.  Similarly, as to the medical defendants only one grievance, dated April 13, 2007, specifically named particular defendants, who are also named in this lawsuit, defendants Himmelsbach and Fabian, but this grievance was not appealed by Ball after it was denied at the institution and thus remained unexhausted. (Id., ¶¶155-157.)

In sum, once anonymous, incomplete and untimely grievances are discounted in this case, there appear to be no wholly exhausted claims leveled by Ball in the

instant lawsuit.  Since "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," 42 U.S.C. § 1197e(a), Ball's failure to fully, timely, and adequately exhaust these administrative remedies is fatal here, and compels the entry of summary judgment in favor of the defendants on all of these claims.[7]

## IV.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motions for summary judgment (Docs.177 and 182), be GRANTED, and IT IS FURTHER RECOMMENDED that this case should be dismissed as to all defendants and closed.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days

---

[7]Because we resolve this case on administrative exhaustion grounds, where Ball has not contested the material facts, we do not address Ball's assertion that there are disputed medical facts in this case beyond observing that it was incumbent upon Ball, a *pro se* litigant with substantial experience in federal court, to properly preserve these claims through the grievance process, a process that was well-known to this plaintiff.

after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions

Submitted this 21st day of November, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge